UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
APRIL DEARDEN,

                Plaintiff,

    -against-                        **COMPLAINT**

                                                    Jury Trial Demanded
GLAXOSMITHKLINE LLC., d/b/a GSK,
GLAXOSMITHKLINE CONSUMER HEALTHCARE
HOLDINGS (US) LLC., d/b/a GSK,

                Defendants.
-------------------------------------------------------------------X



      Plaintiff APRIL DEARDEN, (herein "Plaintiff"), by and through her attorneys Frank & Associates, P.C., brings this action against Defendant GLAXOSMITHKLINE LLC., d/b/a GSK, GLAXOSMITHLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC., d/b/a GSK, (collectively "Defendants"), and respectfully alleges as follows:

### NATURE OF THE CASE

    1.    Plaintiff brings this action under the Family and Medical Leave Act of 1993, as amended, ("FMLA"), 29 U.S.C. § 2601 *et seq.* based on Defendant's willful and unlawful termination of Plaintiff in retaliation for the exercise of her rights under the FMLA.

### JURISDICTION AND VENUE

    2.    This Court has jurisdiction over this action pursuant to the FMLA and 28 U.S.C. §1331.

    3.    Venue is proper pursuant to 28 U.S.C. § 1391 as Defendants unlawful employment practices were committed in the County of Dutchess, State of New York, within the Southern District of New York.

### PARTIES

4.  Plaintiff is a former employee of GSK, and resides in Poughkeepsie, Dutchess County, New York. During the year preceding the grant of disability leave by GSK, Plaintiff worked for more than one (1) full year and 1,250 hours, and was therefore eligible for and did receive FMLA leave from GSK to care for a serious health condition.

5.  At all times relevant herein, Plaintiff has been an "Eligible Employee" within the meaning of the FMLA.

6.  At all times relevant herein, Plaintiff suffered from a "serious health condition" within the meaning of 28 U.S.C. § 2611(11).

7.  Upon information and belief, at all times relevant herein, GSK was engaged in commerce or in an industry affecting commerce within the meaning of the FMLA.

8.  Upon information and belief, at all times relevant herein, GSK has employed in excess of 50 employees during each of twenty (20) or more calendar workweeks.

9.  Upon information and belief, at all time relevant herein, GSK has been an "Employer" within the meaning of the FMLA.

## BACKGROUND FACTS

10. Plaintiff began employment with GSK on September 30, 2002 as a pharmaceutical sales representative at a salary of $47,000 a year.

11. Plaintiff was consistently ranked as a top sales manager and as such rose rapidly in the Company. She was promoted to senior sales representative on July 10, 2006, and to executive sales representative on September 29, 2008. On May 25, 2009, she was promoted to senior executive therapeutic professional and on October 10, 2011 to neuroscience health sales senior executive specialist.

12. Each of Plaintiff's promotions included a substantial merit-based salary increase. Plaintiff's base salary had risen to $94,170 plus incentive payments of $24,718 totaling $111,888 annually when she was granted Family Medical Leave.

13. Plaintiff had always maintained a top salesperson ranking with GSK and had impeccable relations with her GSK customers.

14. Plaintiff had never received an disciplinary action within her tenure at GSK nor has she ever had a less than satisfactory evaluation.

15. Plaintiff's history of exemplary performance, dedication and results as a top salesperson continued until May 14, 2014 at which time, she advised GSK that she required FMLA leave for her own serious health condition.

16. On May 15, 2014 the company issued a "Designation Notice (Family Medical Leave Act)" in which Plaintiff was granted leave effective May 19, 2014 for her own serious health condition. She was also granted Short Term Disability benefits.

17. Plaintiff remained on medical leave until August 24, 2014. She had used twelve (12) work weeks (81 days) of leave.

18. August 25, 2014 was Plaintiff's first day back at work following her leave. She was immediately subject to retaliatory harassment.

19. Thus, Manager Lauren Phillips, (herein "Lauren"), instructed her to create a "TO DO" list. She was also required to submit on a weekly basis a report of her daily activities. Plaintiff was the only salesperson in her unit required to submit such reports.

20. Lauren also gave Plaintiff a Transition Plan, covering the full week of August 25-29 which included such items as, scheduling an assessment, renewing Pharma entries and related promo

materials, calls to customers, brining an "Amex account up to date" and completion of all "My Learnings Computerized Training Modules."

21. Plaintiff needed to quickly become knowledgeable about details of new products, which were provided by "Peer Education."

22. Significantly, on August 25, 2014 when Plaintiff attempted to work on the plan transition assignments from her home, she found that she was unable to access her GSK laptop computer. She was "locked out," a most unusual occurrence. She called IT and was told to ship the computer to North Carolina for a personal reset. The reason for Plaintiff's failure of access was never explained, and she sent the laptop via UPS on Tuesday August 26, 2014. The laptop was returned the following Thursday with a new access number.

23. After advising Lauren of her computer lock out, Plaintiff received a curt e-mail from Lauren regarding her work schedule. It included instructions to see customers in her previous territory which shockingly was designated as "uncovered" (not currently being covered by any particular salesperson) although Plaintiff was back at work for a few days. Lauren also included a revised transition plan.

24. During days Plaintiff did not have use of her computer she made calls to clients, read information on the new company products, studied simulator and performed field work.

25. In addition to covering her assignments, Plaintiff:

a. Read approximately 400 e-mails about product updates, general business and national and regional territory level,

b. Completed 6 computer learning modules, and

c. Scheduled an "Assessment and Simulation" test.

26. The Assessment and Simulations were to evaluate Plaintiff's

  a. Business acumen,

  b. Customer engagement, and

  c. Scientific knowledge.

27. Plaintiff was scheduled to take a mandatory assessment test on September 10, 2014, and needed to cram study for a test which would normally require weeks of preparation. She used up all of her annually granted study days to prepare for this single test.

28. On September 9, 2014, the day before her test, Plaintiff was ordered to meet Kevin Ryan from the company's Security Department the next day in the lobby of the Marriott Westchester Hotel.

29. Plaintiff explained to Ryan she was scheduled for her assessment a test that afternoon and needed to reschedule the meeting. Her request was denied, and she was instructed to meet with Ryan and the "Corporate Investigative Team" the morning of September 10th.

30. At the meeting, Plaintiff answered all questions completely and accurately.

31. The meeting ended without comment or action by the investigators.

32. At the conclusion of the meeting Plaintiff rushed to take her Simulation and Assessment exam.

33. Due to the overwhelming stress and anxiety she had experienced from the conduct of Lauren, the meeting with Security, and the assessment test, Plaintiff took two (2) approved vacation days on September 11, 2014 and September 12, 2014 to recuperate.

34. Around September 12, 2014, Plaintiff received a "Confidential Subject Statement": which purported to include the responses she provided to the questions she had been asked by Ryan at the interview.

35. Plaintiff's responded and was severely critical of the inaccuracy of her responses related by the investigators.

36. She corrected numerous factual errors and noted the failure of Security to record several exculpatory answers she had provided.

37. On September 15, 2014, Plaintiff was called to a telephone conference by Lauren, during which she was severely and unjustly criticized about her use of the two (2) days of approved vacation she had taken on September 11 and 12.

38. She was shocked to hear from Lauren the accusation that for the first time during her career with GSK her work "in general was stuck in second gear since her return" and that her performance "wasn't fair to the other teammates that have been there the whole time while she was out on leave."

39. Plaintiff strongly objected to this criticism.

40. On September 17, 2014, Plaintiff called Human Resource Department (HR) to file a complaint about Lauren's harassment and retaliation.

41. Lauren then ceased talking and interacting with Plaintiff, and she also cancelled a previously scheduled ride- along, which is a critical factor to evaluate a salesperson's work performance and compliance with company procedures.

42. For the following two (2) months Plaintiff continued to sell effectively. No mention was made about the Security investigation. She also contacted HR on several occasions intending to complain about Lauren's continuing dismissive attitude, but none of her calls were returned.

43. Two and a half (2 ½) months after her return from Medical Leave, on November 12, 2014, Plaintiff received a call from HR to inquire whether she had taught class at a school. Plaintiff acknowledged she had taught once a week during her lunch hour.

44. More than three (3) months after her return from leave, on December 2, 2014, Plaintiff was ordered to report to Sheraton Hotel in Mahwah, New Jersey, ostensibly to "close" the alleged conflict case. Present were Regional V.P. Sean McLoughlin, manager Lauren Phillips and, on speaker phone, the same H.R. person who had called her on November 12, 2014.

45. When Plaintiff arrived and without conversation, Lauren read a "Separation Notice" to Plaintiff.

46. Plaintiff requested a Severance Package. She was told to contact HR. She did so, but no severance package was offered.

47. Upon information and belief, sixteen (16) other employees who had previously been terminated for a far more serious offense than alleged against Plaintiff – cheating on an assessment test - received severance packages.

48. None of those persons was disabled, nor had any of them taken Family Medical Leave.

49. Defendant's stated reasons for the unlawful discharge and refusal of severance were pretextual and constitute retaliation against Plaintiff for exercising her right to Medical Leave for her own serious health conditions pursuant to the FMLA.

## CLAIM FOR RELIEF
*Violation of FMLA- 28 U.S.C. § 2615*

50. Plaintiff repeats and realleges each and every allegation contained in this complaint as if fully set forth herein.

51. Plaintiff was provided with required medical health leave because of her serious health condition pursuant to 28 U.S.C § 2612.

52. Defendant's retaliatory actions against Plaintiff for exercising her right to medical leave violates FMLA as it interferes with, restrains, or denies her FMLA rights.

53. As a proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer substantial loss of future earnings, related monetary benefits, emotional damages and benefits of her employment with GSK.

54. As Defendant's conduct violates 28 U.S.C. § 2615, Plaintiff is entitled to damages equal to the amount of wages, salary, employment benefits, and/or other compensation denied or lost by reason of Defendant's violation, plus interest.

55. Plaintiff is also entitled an additional amount of liquidated damages in an amount to be determined at trial, and reasonable legal fees and associated costs of this litigation.

## DEMAND FOR JURY TRIAL

56. Plaintiff demands a trial by jury.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment as follows:

a. Plaintiff be made whole in the form of lost earnings to the date she secures equivalent employment, with interest and all benefits both actual and emotional which would have been afforded Plaintiff but for the retaliation herein;

b. Defendant be ordered to compensate, reimburse and make the Plaintiff whole for compensatory damages in an amount to be determined at trial;

c. Defendant be ordered to pay liquidated damages to be determined at trial;

d. Defendant be ordered to pay Plaintiff punitive damages in an amount to be determined at trial;

e. Defendant be ordered to pay Plaintiff prejudgment interest;

a. Defendant be ordered to pay the costs and disbursements of this action, including Plaintiff's attorneys' fees; and

f. For such other and further relief as may be just and proper.

Dated: Farmingdale, New York
      September 28, 2015

                                    FRANK & ASSOCIATES, P.C.

                                    *Attorneys for Plaintiff*

By:    /s Neil Frank
                                    Neil M. Frank, Esq.
                                    500 Bi-County Blvd. Suite 465
                                    Farmingdale, New York 11735
                                    (631) 756-0400
                                    nfrank@laborlaws.com